**HALSBAND LAW OFFICES**
David S. Halsband, Esq.
Court Plaza South
21 Main St., East Wing
Third Floor, Suite 304
Hackensack, New Jersey 07601
T. 201.487.6249
F. 201.487.3176
E. david@halsbandlaw.com
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
----------------------------------------------------------X

SHEILA MCLEAN,

                        Plaintiff,

-against-

WYCKOFF SCHOOL DISTRICT,

                        Defendant.
----------------------------------------------------------X

**COMPLAINT AND
DEMAND FOR JURY TRIAL**

_____ -cv-_____

Plaintiff, by her counsel, Halsband Law Offices, alleges for her Complaint as follows:

## JURY DEMAND

1.  Plaintiff demands a trial by jury of all issues in this action.

## NATURE OF ACTION

2.  Plaintiff seeks to recover damages against Defendant for unlawful employment practices in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., as amended ("ADEA"), and the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1, et seq., as amended ("NJLAD").

## JURISDICTION AND VENUE

3.  This Court has subject matter jurisdiction over Plaintiff's claims in this action based on 28 U.S.C. § 1331, the ADEA, and under the principles of pendent jurisdiction.

1

4.   The Defendant is found, transacts business, has agents, and is within the jurisdiction of this Court.

5.   Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the events giving rise to the claims occurred in this judicial district.

6.   The Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission on September 22, 2021, alleging claims under the ADEA.

7.   Sixty days have elapsed since the Plaintiff filed the ADEA claims with the EEOC.

8.   As a result of the passing of said sixty days, the ADEA claims asserted herein are timely.

### PARTIES

9.   Plaintiff is an adult female resident of the State of New Jersey.

10. Plaintiff is approximately 63 years of age.

11. At all relevant times, the Defendant, Wyckoff School District ("Wyckoff" or "District"), has been a local municipality with its main office located at 241 Morse Avenue, Wyckoff, New Jersey 07481.

12. Wyckoff is an "employer" as defined in the ADEA.

13. Wyckoff is an "employer" as defined in the NJLAD.

### FACTS

14. Plaintiff began her employment with Wyckoff in 2006.

15. Since August 2006, Plaintiff has been employed by Wyckoff as a School Counselor and School Social Worker.

16. Plaintiff initially worked at Sicomac, an elementary school, and thereafter she was transferred to Washington, another elementary school.

17. In June 2010, at her request, Plaintiff transferred to the Eisenhower Middle School (the only middle school in the District), where she has worked since.

18. In June 2018, the then Superintendent, Richard Kuder, asked the Plaintiff to accept the position of District School Safety Specialist, which required additional specialized training annually.

19. During Plaintiff's 16 years in the District, she has also worked on many committees, including the pandemic response committee (both for the District and for Eisenhower), the scheduling committee at Eisenhower, and the teacher evaluation tool committee.

20. As a result, the Plaintiff has substantial experience at Eisenhower in a wide variety of areas particularly appropriate to the position of Assistant Principal.

21. Plaintiff also has a Principal's Certification from the State of New Jersey.

22. At all relevant times herein, Plaintiff has performed her job duties competently and satisfactorily.

23. Kerry Postma ("Postma") is the Superintendent of Wyckoff.

24. Postma has been the Superintendent for approximately two years.

25. Postma is younger than the Plaintiff.

26. Upon information and belief, Postma is in her mid-to late forties.

27. In 2021, Postma placed both the former Principal and former Assistant Principal at Eisenhower on administrative leave.

28. This development required the Assistant Superintendent, Grace White ("White"), to take an interim Administrative position at Eisenhower.

29. Upon White's accepting this interim Administrative position, White often asked Plaintiff for guidance and information about certain personnel at Eisenhower and how various programs operated in that school.

**Assistant Principal Position**

30. Once the Assistant Principal was removed from administrative leave, he began looking for another job and he resigned from the District in or around May 2021. Thus, the Assistant Principal position at Eisenhower became vacant at that time.

31. Because of the instability at Eisenhower given Postma's decision to place the Principal and Assistant Principal on administrative leave in January 2021 and given that their employment ultimately had ended and/or was scheduled to end, Postma listed the vacant position for Assistant Principal at Eisenhower only internally in order to focus solely on candidates who were familiar with Eisenhower.

32. Plaintiff was an ideal fit for Assistant Principal at Eisenhower. She has wide experience at Eisenhower and she has extensive knowledge of the building, the employees, the policies and practices, and the programing at Eisenhower for the last decade.

33. As a result, Plaintiff had several conversations with Postma about her intention to apply for Assistant Principal and she then applied.

34. In the spring of 2021, Stacey Linzenbold was the Supervisor of Special Projects for the District.

35. Linzenbold reported to the Assistant Superintendent, White, and handled issues concerning kindergarten, testing, and response to intervention at the elementary level.

36. However, Linzenbold had little involvement with any operations at Eisenhower, with the exception of evaluation of the special area teachers, such as physical education, music, art and technology.   She was not a member of the administrators' union.

37. Linzenbold is in her early forties and thus, like Postma, is also much younger than the Plaintiff.

38. Linzenbold had been given a vacant office at Eisenhower in and around the summer of 2020, but her duties concerned special projects for the District and she had extremely limited involvement in the operations of Eisenhower.

39. Linzenbold's limited involvement included acting as the administrator in charge when the Principal and Assistant Principal were not present, but the Plaintiff also performed these duties when requested by the Principal and Assistant Principal.  In fact, on the few occasions that Linzenbold was the acting administrator in charge at Eisenhower, she often asked the Plaintiff to assist her.

40. Linzenbold had never worked at a middle school and frequently came to the Plaintiff for advice as to how Eisenhower operated in a variety of areas.

41. As both White and Linzenbold frequently came to the Plaintiff for advice, in March of 2021, the Plaintiff suggested that they needed to begin planning the schedule for the next school year as this was an extremely complex process.

42. Plaintiff had regularly worked with the former Principal to create the school schedule at Eisenhower for each new school year going back approximately 10 years and thus had substantial knowledge of both how this process worked as well as the personnel at Eisenhower that would be teaching the next year courses.  Unfortunately, White and Linzenbold did not begin to focus on scheduling until several months later.

43. Only three people had been interviewed for the Assistant Principal position: Linzenbold (who is approximately 20 years younger than Plaintiff); Katie de St. Paer ("de St. Paer,"), who is younger than Linzenbold; and Plaintiff.

44. During Plaintiff's interview for the Assistant Principal position at Eisenhower, she specifically asked Postma what she was looking for in order to fill this position. Postma explained that she needed an Assistant Principal at Eisenhower that could bring stability to the school, meaning a person that knows the building, the employees, and the issues involved, one of which is scheduling. Postma explained that this familiarity with the school was of utmost importance as she had planned to bring in an interim principal for Eisenhower for the next school year and needed continuity at the school, which could be accomplished by hiring an Assistant Principal with these qualifications.

45. During Plaintiff's interview Postma asked her four specific questions with the caveat that Plaintiff was required to give a "yes or no" answer, which precluded her from providing valuable information responsive to the question.

46. During Plaintiff's interview Postma first asked whether the Plaintiff had ever evaluated teachers. However, Postma knew the Plaintiff had not officially evaluated teachers given her position as a School Counselor, even though the Plaintiff had evaluated interns that had worked with her, including an intern that the District later hired as a School Counselor. Moreover, Plaintiff is certainly qualified to evaluate teachers because she has a Principal's Certificate from the State of New Jersey.

47. Second, Postma asked whether the Plaintiff had ever created a master school schedule. Once again, Postma knew the Plaintiff had not officially created a master school schedule given her position as a School Counselor, but Plaintiff did in fact have significant

experience in scheduling at Eisenhower because she worked with the former Principal for years on the master schedule, and the Plaintiff had attended regular training on scheduling and creating a master schedule.

48. Third, Postma asked the Plaintiff whether she was willing to attend after school programs.  Plaintiff had been doing this for years given her various committee assignments and she explained that she was willing to continue doing so as Assistant Principal.

49. Finally, fourth, Postma asked whether the Plaintiff was willing to attend school board meetings.  Plaintiff had often attended school board meetings during her 10 year-plus tenure at Eisenhower and she explained that she was willing to continue doing so as Assistant Principal.

50. Plaintiff understands that Linzenbold has no experience in scheduling.  In fact, she often asked the Plaintiff for advice as to how the school operated.

51. Postma hired Linzenbold for the Assistant Principal position in June 2021 instead of the Plaintiff.

52. Postma hired Linzenbold for the Assistant Principal position despite the fact that the Plaintiff had objectively better credentials for all the qualifications that Postma had represented were essential for that position: knowledge of the building and its programs, the employees and scheduling.  More significantly, Linzenbold had no experience whatsoever in scheduling, which became painfully evident over the last school year, and Linzenbold had extremely limited experience at the school.

53. Linzenbold clearly lacked the qualifications and experience that Postma identified were critical: knowledge of the building, its programs, the employees, and scheduling.

54. Postma's refusal to hire the Plaintiff for the position was on the basis of the Plaintiff's age, as shown by the fact that she hired a much younger and less qualified person, who had no

prior experience whatsoever in middle school and very limited experience at Eisenhower, during which she frequently came to the Plaintiff for advice.

55. Since being hired, Linzenbold has demonstrated that she is not qualified for the Assistant Principal position.

56. Soon after Linzenbold was hired as Assistant Principal she frequently asked the Plaintiff about scheduling, which was a critical area identified by Postma.

57. In fact, due to Linzenbold's inability to handle the scheduling, the District was required to hire an outside vendor to perform various scheduling functions for the 2021-22 school year with which the Plaintiff had substantial familiarity.

58. Moreover, given Linzenbold's unfamiliarity with scheduling and the personnel at Eisenhower, she was unable to provide the outside vendor with appropriate guidance, which required the vendor to spend unnecessary time to assist with the scheduling.

59. This mixture of both a vendor that was unfamiliar with the teachers, programing and unique scheduling issues of both special education and general education students at Eisenhower, and Linzenbold's complete ignorance of how to create a schedule, caused numerous scheduling issues.

60. For example, the School Counselors were required to input the same changes to the schedules on at least three occasions because the vendor ran schedules that deleted these changes on more than one occasion.  The scheduling problems created inappropriate mixtures of students in classes, such as only 10 students in one core academic class while 27 students were placed in the next scheduled core academic class.  This mixture of incompetence and ignorance resulted in significant—and unnecessary—expense to the District.  Had the Plaintiff been hired to the

Assistant Principal position this expense would have been unnecessary, showing objectively her superior qualifications.

61.   Indeed, the various issues in scheduling resulted in numerous problems for the students and required all School Counselors and Linzenbold to expend significant time during the beginning of the 2021 school year at Eisenhower to correct such issues.  Such issues could have been avoided had the Plaintiff been hired to the Assistant Principal position, but the students at the school have been forced to deal with unnecessary scheduling issues as a result of Postma's discriminatory hiring.

62. Postma knew that Linzenbold did not have the qualifications or experience to be the Assistant Principal at Eisenhower.  However, Postma hired Linzenbold anyway instead of the Plaintiff because she is 20 years younger than the Plaintiff.

**Director of Student Personnel Services Position – The Director Position**

63. In addition, Plaintiff was also not hired for the position of Director of Student Personnel Services (the "Director Position").

64. In advertising for the Director Position, Postma identified the necessary qualifications for the position as including experience as a case manager who had been on a Child Study Team with the required certifications, which included: School Psychologist, Learning Disabilities Consultant and/or Social Worker.

65. Absolutely no requirement for experience as a Director or with Autism was identified in the advertisement for the Director Position.

66. Experience with Autism is still not listed as either a qualification for, or responsibility of, the Director Position in the job description for this position.

67. Plaintiff has substantial experience in both case management and being part of a Child Study Team.

68. The younger person hired instead of the Plaintiff for the Director Position did not have one of the listed necessary qualifications—specifically experience in case management or being on a Child Study Team—when she was hired for this Director Position.

69. Moreover, after Postma refused to hire the Plaintiff for the Director Position, she told the Plaintiff that one of the reasons she hired the person for the Director Position was that she had experience working with students on the Autism spectrum.   Remarkably, Plaintiff has 20 years of experience in working with such students, and Postma had never asked whether the Plaintiff had any such experience nor was this identified as a qualification for the position.

70. Upon information and belief, the District has done nothing in the last year (since the new Director Position was filled) to further the development of Autistic children in preschool.

71. Prior to filling the Director Position, the District had a half day self-contained preschool class that has an applied behavior analysis methodology, which it continues to maintain.

72. Plaintiff understands that the person who was hired for the Director Position is approximately ten years younger than the Plaintiff.

73. Plaintiff was denied this position in or about May 2021.

**Plaintiff's Reporting of and Objection to Age Discrimination**

74. On or about June 21, 2021, Plaintiff sent an email to Postma.

75. In Plaintiff's June 21, 2021, email to Postma, Plaintiff objected to her decisions not to hire the Plaintiff for the positions of Assistant Principal and the Director Position.

76. In that email, Plaintiff notified Postma that her decisions not to hire her for one of these positions were most likely age discrimination.

77. In the email, Plaintiff requested the opportunity to discuss her report of age discrimination with Postma.

78. Plaintiff's notification to Postma about age discrimination was a legally protected activity under the ADEA and NJLAD.

79. After receiving Plaintiff's email of June 21, Postma did not contact the Plaintiff to discuss her report of age discrimination.

80. Postma did not investigate Plaintiff's report of age discrimination.

81. Postma did not instruct anyone at the District to investigate Plaintiff's report of age discrimination.

82. On September 22, 2021, Plaintiff filed an administrative Charge of Discrimination (the "Charge") with the United States Equal Employment Opportunity Commission ("EEOC").

83. In the Charge, Plaintiff alleged that the District unlawfully discriminated against her because of her age.

84. On April 11, 2022, the District submitted a written response to the Charge (the "District's Position Statement").

85. In the District's Position Statement, the District acknowledged that Postma "received an email from McLean on or about June 21, 2021 . . ."

86. In the District's Position Statement , the District stated that Postma did not ignore the June 21 email, but Postma "overlooked it."

87. In the District's Position Statement, the District stated that "[t]here seems to be a genuine issue as to whether McLean intended her email to trigger the complaint under the Board's Affirmative Action Program."

88. In the District's Position Statement, the District stated that "[t]he genuineness of McLean's expectation that Postma would initiate an affirmative action investigation is [] called into question by the fact that she filed her charge with the EEOC four (4) days before she sent the June 21, 2021, email to Postma."

89. The District thus misrepresented to the EEOC that the Plaintiff filed her Charge four days prior to June 21, 2021.

90. As noted above, Plaintiff filed the Charge on September 22, 2021, not in June 2021.

91. Thus, the District's assertion to the EEOC that the Plaintiff filed the Charge before she reported age discrimination in the June 21, 2021, email to Postma was false.

92. The District was obligated by law to provide truthful information to the EEOC in responding to the Charge.

93. The District's false statement to the EEOC about when the Plaintiff filed the Charge was designed (a) to undermine the Plaintiff's allegations of age discrimination to the decision-makers at the EEOC and (b) to excuse Postma's total abdication of her legal duty to investigate Plaintiff's report of age discrimination.

94. But the District's false statement to the EEOC is too clever by half.  Even if the Plaintiff had filed the Charge before she sent the June 21 email, the District would still have been legally required to investigate the Plaintiff's report of age discrimination contained in the June 21 email.  Plaintiff's report of age discrimination on June 21 to Postma triggered Postma's duty to investigate, regardless of whether the Plaintiff had filed an EEOC charge at that time.  The

District's false statement about the timing of the filing of the Charge generates the misleading impression that Postma's duty to investigate was reduced or obviated because of a filing with the EEOC, when that is simply untrue.

95. Thus, the District's false statement to the EEOC was designed to leave the impression to the EEOC that the District's failure to investigate the report of age discrimination was justified, when clearly it was not.

96. The District has not corrected this false statement to the EEOC.

97. Moreover, to date, the District still has not complied with its Affirmative Action Program to investigate Plaintiff's report of age discrimination.

98. It appears that Postma did not refer the Plaintiff's complaint of age discrimination to any person at the District whose duties include investigating complaints of age discrimination, as the Plaintiff has not been informed by any person of such an investigation.

99. The District's refusal to investigate the Plaintiff's complaint of age discrimination or refer it to a person who could investigate demonstrates that the District does not have an effective policy against age discrimination.

**Supervisor of Special Projects Position – The Supervisor Position**

100. Plaintiff's June 21, 2021, email to Postma additionally asked about another Administrative position in the District, the Supervisor of Special Projects (the "Supervisor Position").

101. Plaintiff's email to Postma also made several suggestions as to what additional duties the Supervisor Position could potentially assume in order to make that position more effectively address the District's needs.

102.    Plaintiff has significant experience with each of the suggested duties, such as assisting with scheduling.

103.    Thereafter, Postma listed the advertisement for the position of Supervisor Position, and *for the first time*, she included a qualification of seven years of teaching experience.

104.    Despite the Plaintiff's substantial qualifications, she does not have seven years of teaching experience.

105.    Remarkably, as noted above, the only other person who had applied for the position of Assistant Principal at Eisenhower, besides Linzenbold and the Plaintiff, was de St. Paer, who is in her late 20s or early 30s.  Significantly, de St. Paer had an assortment of years of teaching kindergarten, "WEL" (Wyckoff Enriched Learning), and as a media specialist.

106.    Postma's decision to include this oddly unique qualification of allegedly needing seven years of teaching was a pretext to disqualify the Plaintiff.  There appears to be no legitimate justification for this purported qualification of seven years of teaching for this position.

107.    In light of Postma's obvious discriminatory intent on the basis of Plaintiff's age, Plaintiff concluded that Postma manufactured this unnecessary qualification for the administrative position of Supervisor of Special Projects to preclude the Plaintiff from applying for this position.

108.    Nevertheless, Plaintiff understands that a number of other candidates applied for the Supervisor Position.  Indeed, in introducing de St. Paer to the Board as the successful candidate for the Supervisor Position, Postma advised the Board that there were over 40 applicants for the position.

109.    What is particularly remarkable is that it now appears that Postma accepted Plaintiff's suggestions for creating additional duties for the Supervisor Position despite the fact that de St. Paer had no experience with any of these duties, while Plaintiff had significant experience in each of these areas.

110.    It is noteworthy that of the three candidates for the position of Assistant Principal at Eisenhower (Plaintiff, de St. Paer, and Linzenbold), the two candidates (de St. Paer and Linzenbold)—each some 20 years younger than the Plaintiff—have received promotions to administrative positions. But Postma has rejected the Plaintiff despite her objectively better credentials than the much younger de St. Paer and Linzenbold whom Postma hired.

111.    Accordingly, of the three candidates that applied for and were interviewed for the Assistant Principal position, the two candidates with significantly less experience and qualifications to handle that position and who are both 20-plus years younger than Plaintiff have each been awarded Administrative positions, while Plaintiff has been systematically rejected for any Administrative position under the supervision of the much younger Postma.

112.    Accordingly, as a result, Wyckoff has discriminated against the Plaintiff on the basis of her age in refusing to hire her for these positions.

113.    As a result of the unlawful actions against the Plaintiff by Wyckoff on the basis of her age, Plaintiff has sustained, and continues to sustain, damages.

**The District and Students Have Been Negatively**
**Impacted As a Result of the Discrimination**

114.    As a result of the decision not to hire Plaintiff as the Assistant Principal and Linzenbold's unfamiliarity with scheduling for Eisenhower (as noted above), the District was required to hire an outside vendor to perform various scheduling functions (as noted above), which would have been unnecessary had Plaintiff been hired as the Assistant Principal given her

15

substantial familiarity and experience with scheduling at Eisenhower.   The accrual of such unnecessary expenses only exacerbates the financial burden on the District.

115.    Eisenhower uses separate "bell schedules"[1] for the three different grades in the school.

116.    Because Linzenbold was completely unfamiliar with the bell schedules at Eisenhower (given her limited time in the building), special education teachers were scheduled to teach during all three bell schedules.

117.    This error in scheduling caused these teachers to be unable to provide the required amount of time in each class as mandated by the students' various Individual Education Plans ("IEPs").   This situation violates state law as the students with IEPs received less than their mandated time of services.

118.     Moreover, the stress of having to teach three different grade levels has caused some special education teachers to resign from the District.

119.    As a result of these resignations, some students with IEPs were no longer being provided with the special education services (in class support) mandated by their IEPs, which is inconsistent with the past practice at the District and the expectations of the parents and staff.

120.    For example, a special education teacher resigned who was providing in class support to all three grade levels.   Prior to this special education teacher's resignation, a leave replacement reading teacher, who is not a certified reading teacher, was already providing reading instruction in a general education class for a separate teacher.   After the resignation of the special education teacher, the leave replacement reading teacher applied for and received board approval for the replacement of the special education teacher who had resigned.   The leave

---

[1] A bell schedule identifies the beginning and end of each period, of which there are nine at Eisenhower.

replacement teacher was qualified for this position as she is certified as a special education teacher.  Nevertheless, Postma decided that the board approved special education teacher would remain as the leave replacement reading teacher.  This resulted in a teacher, who was not certified as a reading teacher, providing reading instruction to students, and prevented that teacher, who is certified as a special education teacher, from providing in class support to special education students.  Moreover, the special education students were no longer receiving any special education in class support as mandated per their IEPs and in violation of state law.

121.    Plaintiff is a case manager for the eighth grade and thus she is responsible for ensuring that special education students in the eighth grade at Eisenhower receive the services provided in their IEPs.

122.    Plaintiff is accordingly extremely familiar with the federal and state law for special education (e.g., Individuals with Disabilities Educational Act ("IDEA")).

123.    Even though Plaintiff is the case manager for some of the students impacted by this decision, the administration failed to advise Plaintiff of this development, which resulted in the violation of the students' IEPs and state law.

124.    Nevertheless, upon learning of this development, Plaintiff contacted the Director of Student Personnel Services (one of the jobs Plaintiff was not hired for) due to her concern for these students not receiving the services they need.

125.    The Director stated that it was not her responsibility to ensure that the students with IEPs receive the services mandated in their IEPs, but instead this was a "building based decision."

126.    The result is that due to the sheer incompetence and utter disregard for the needs of the students in the District, the current administration, headed by Postma, ensured that certain

special education students did not receive their mandated services even though a special education teacher was available and was board approved to provide such services, while other students were  receiving reading instruction from a teacher who was  not certified to provide such instruction.

127.    Accordingly, in addition to the damages sustained by the Plaintiff, the students at Eisenhower have been negatively impacted as a result of the discrimination of the District.

## LEGAL CLAIMS

### First Claim

### ADEA

### Discrimination: Refusal to Promote to the Position of Assistant Principal

128.    The preceding paragraphs are incorporated herein.

129.    By and through their course of conduct as alleged above, Wyckoff and its agents willfully violated the ADEA by refusing to promote the Plaintiff to the position of Assistant Principal on the basis of her age.

130.    As a consequence thereof, Plaintiff has been caused to suffer injuries and damages in amounts to be determined at trial.

### Second Claim

### ADEA

### Discrimination: Refusal to Promote to the Position of
### Director of Student Personnel Services

131.    The preceding paragraphs are incorporated herein.

132.    By and through their course of conduct as alleged above, Wyckoff and its agents willfully violated the ADEA by refusing to promote the Plaintiff to the position of Director of Student Personnel Services on the basis of her age.

133.    As a consequence thereof, Plaintiff has been caused to suffer injuries and damages in amounts to be determined at trial.

## Third Claim

## ADEA

### Discrimination: Refusal to Investigate Claim of Age Discrimination

134.    The preceding paragraphs are incorporated herein.

135.    Wyckoff has a legal duty to investigate claims of age discrimination under the ADEA.

136.    By and through their course of conduct as alleged above, Wyckoff and its agents willfully violated the ADEA by refusing to investigate Plaintiff's complaint of age discrimination and has thereby discriminated against the Plaintiff because of her age.

137.    As a consequence thereof, Plaintiff has been caused to suffer injuries and damages in amounts to be determined at trial.

## Fourth Claim

## NJLAD

### Discrimination: Refusal to Promote to the Position of Assistant Principal

138.    The preceding paragraphs are incorporated herein.

139.    By and through their course of conduct as alleged above, Wyckoff and its agents willfully violated the NJLAD by refusing to promote the Plaintiff to the position of Assistant Principal on the basis of her age.

140.    As a consequence thereof, Plaintiff has been caused to suffer injuries and damages in amounts to be determined at trial.

**Fifth Claim**

**NJLAD**

**Discrimination: Refusal to Promote to the Position of
Director of Student Personnel Services**

141.    The preceding paragraphs are incorporated herein.

142.    By and through their course of conduct as alleged above, Wyckoff and its agents willfully violated the NJLAD by refusing to promote the Plaintiff to the position of Director of Student Personnel Services on the basis of her age.

143.    As a consequence thereof, Plaintiff has been caused to suffer injuries and damages in amounts to be determined at trial.

**Sixth Claim**

**NJLAD**

**Discrimination: Refusal to Investigate Claim of Age Discrimination**

144.    The preceding paragraphs are incorporated herein.

145. Wyckoff has a legal duty to investigate claims of age discrimination under the NJLAD.

146. By and through their course of conduct as alleged above, Wyckoff and its agents willfully violated the NJLAD by refusing to investigate Plaintiff's complaint of age discrimination and has thereby discriminated against the Plaintiff because of her age.

147. As a consequence thereof, Plaintiff has been caused to suffer injuries and damages in amounts to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays that this Court:

    (a)    accepts jurisdiction over this matter;

    (b)    impanels and charges a jury with respect to the claims for relief; and

    (c)    awards the following damages against Defendant:

        i.    Back pay, front pay, and all benefits along with pre and post judgment interest in amounts to be determined at trial;

        ii.    Punitive, liquidated, and compensatory damages including, but not limited to, damages for pain and suffering, anxiety, humiliation, physical injuries and emotional distress in order to compensate the Plaintiff for the injuries suffered and to signal to other employers that discrimination in employment is repulsive to legislative enactments, in amounts to be determined at trial,

        iii.    Attorney's fees, costs and expenses as provided for by the applicable statutes;

        iv.    Any other relief which this Court deems just and equitable.

**CERTIFICATION PURSUANT TO LOCAL RULE 11.2**:  I hereby certify that to the best of my information, knowledge and belief that the matter in controversy is not the subject of any other action pending in any court or of any pending arbitration proceeding or administrative proceeding, except Plaintiff's ADEA claims are still pending at the EEOC.

Dated: Hackensack, New Jersey
      June 3, 2022

                        Respectfully submitted,

                        **HALSBAND LAW OFFICES**

           By:    s/David S. Halsband
                  David S. Halsband, Esq.
                  Attorney for Plaintiff
                  Court Plaza South, 21 Main St., East Wing
                  Third Floor, Suite 304
                  Hackensack, New Jersey 07601
                  Tel.: 201.487.6249; Fax: 201.487.3176
                  Email: david@halsbandlaw.com